UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HC4, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-872 |
| | § | |
| HC4, INC., | § § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Defendant HC4, Inc.'s ("HC4") Motion for Summary Judgment (Doc. 26). Having considered the motion, the response, the reply, the facts in the record, and the applicable law, the Court grants the motion.

### I. Background

This case arises from allegedly statutory and common-law breaches of fiduciary duty by Defendant which caused Plaintiff HC4, Inc. Employee Stock Ownership Plan (the "ESOP") to suffer financial loss. The ESOP is a stock bonus plan under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and an employee stock ownership plan under Section 4975(e)(7) of the Code and Section 407(d)(6) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

Plaintiff alleges that it suffered severe losses resulting from various breaches of fiduciary duty and/or statutory violations by Defendant HC4, a Texas corporation, and its directors, officers, and employees, the fiduciaries of the ESOP. HC4 is accused of breaching its fiduciary duties to the ESOP by breaching duties imposed by ERISA, by its conduct as a fiduciary of the ESOP, and through certain negligent acts or omissions in its administration of the ESOP.

As background, Jason Freeman formed Hallmark Capital Group, LLC ("Hallmark Capital") in 2002. In 2012, Hallmark Capital began to investigate the possibility of establishing an ESOP and formed Hallmark Group, Inc. ("Hallmark") to facilitate implementation of the ESOP program. The Hallmark Group, Inc. Employee Stock Ownership Plan was adopted and became effective March 1, 2012. Doc. 26 at 6–7

Shortly after the ESOP was established, Jason Freeman began to discuss a potential merger with Esther Francis ("Francis"), the sole owner of CBIC Construction & Development, LLC ("CBIC") and FCS Fab, Inc. ("FCS"), via share exchange. Hallmark obtained the financial statements of CBIC and FCS and after reviewing them decided that it was in the company's best interest to proceed with the merger. *Id.* at 9.

On December 31, 2012, CBIC, FCS, and Hallmark merged, with Francis transferring her shares of CBIC and FCS to Hallmark while Jason Freeman transferred 40,000 of his Hallmark shares to Francis so that Hallmark became the sole owner of all shares of CBIC and FCS. At this time, Hallmark changed its name to HC4, Inc. ("HC4"). During the events culminating in this lawsuit, the four equal shareholders of HC4 were Esther Francis, Jason Freeman, his wife Melissa Freeman, and the ESOP. *Id.*

After the merger, HC4 began to suffer as a company for various reasons including a decrease in the company's active government contracts, resulting in a decrease in cash flow. The trustee of the ESOP, Robert Roten, expressed concern to Jason Freeman regarding the decrease in revenue because it indicated a loss of value to the company's stock and to the ESOP's asset. Additionally, in the spring of 2014, Jason Freeman discovered that Francis had engaged in financial misconduct while she was in charge of CBIC and FCS prior to the merge and as a director of HC4. Freeman believed that Francis had:

(1) misapplied and failed to pay approximately $550,000.00 in 940 and 941 federal payroll withholding taxes for CBIC and FCS; (2) misapplied approximately $250,000.00 in funds that were for payment of subcontractors, suppliers, and vendors on contracts of CBIC and FCS; (3) paid her relatives on company payroll as subcontractors when those relatives had not in fact performed services; and (4) embezzled funds from the company.

*Id*. at 13. Freeman and Roten confronted Francis about these transactions and she stated that she would make sure the liabilities were paid. At a subsequent meeting of the shareholders of HC4, Francis was removed from the board of directors due to this misconduct. *Id.* at 14.

Meanwhile, the year-end valuation report for 2013 showed continuing drops in revenue and profit, which lowered the valuation of the company substantially. The per-share value of HC4 fell from $40 to $2.55. In late 2014, HC4 shut down all its operations and terminated all its employees. On February 2, 2015, the ESOP participants were sent a check for the distribution on their vested benefit based on a share value of $2.55 per share. *Id.* at 15.

As a result of these severe losses suffered by the ESOP, on January 28, 2015, the ESOP filed suit in state court alleging various breaches of fiduciary duty and statutory violations committed by HC4, its directors, its officers, and its employees, which were the fiduciaries of the ESOP. Compl., Doc. 1-1 at 2. The case was removed to federal court on April 3, 2015. Plaintiff's claims against HC4's co-defendant, Travelers Casualty and Surety Company of America, were severed on January 11, 2016. Defendant HC4 then filed its motion for summary judgment arguing there are no genuine issues of material fact and it is entitled to judgment as a matter of law.

## II. Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute over such a fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder

of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Initially the moving party bears the burden of identifying evidence that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; it does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmovant then can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248–49.

### III. Discussion

Plaintiff asserts two claims: one for statutory violations of ERISA § 404, 29 U.S.C. § 1104 and one for a common law breach of fiduciary duty. For the first count, according to Plaintiff, HC4 failed to act solely in the interests of the ESOP and failed to exercise the required skill, care, prudence, and diligence in its conduct as a fiduciary and in administering the ESOP as is required by ERISA. Plaintiff points to the following specific acts and omissions as examples of violations of HC4's statutory obligations:

- Failing to adequately investigate the operations of CBIC, FCS, and their principal owner Esther Francis prior to the acquisition of such companies
- Failing to uncover the existence of certain significant tax liabilities accumulated by Esther Francis, including in excess of $760,000 in employment tax liability
- Failing to uncover fraudulent payments made using HC4 corporate funds, and resulting tax liabilities, pertaining to certain "ghost" employees, subcontractors and consultants
- Failing to determine the falsity of Esther Francis' representations that her shares of companies to be merged into HC4 were free and clear of all liens, proxies, encumbrances, security interests, contractual rights or any known claims of any kind whatsoever

- Failing to identify and stop Esther Francis' creation of a new entity and related indebtedness
- Failing to conduct reasonable due diligence to uncover and stop Esther Francis from selling property of HC4's Deer Park, Texas office
- Failing to prohibit Ester Francis from retaining valuable property of HC4, including company files and information, keys and access cards, credit cards, computer equipment (desktop, laptop, iPad, flash drives, etc.) after her termination
- Failing to determine the existence of certain liabilities accumulated by Esther Francis on behalf of FCS, which is now being sued by Welco Steel, LLC, before that entity was merged into HC4
- Failing to prevent Esther Francis from issuing several HC4 company checks to herself at the time she was being terminated from HC4

Plaintiff alleges that all the above failures should have been noticed and prevented had HC4 conducted reasonable due diligence and engaged in adequate oversight and accounting practices, and asserts that each of the oversights listed above caused injury and resulted in a material loss to the ESOP by reason of a decrease in the value of HC4's stock. Compl. at 3–6.

For the second cause of action, breach of fiduciary duty, Plaintiff alleges that HC4, the fiduciary of the ESOP, failed to administer the ESOP with single-minded devotion to the interests of the participants. Further, it breached its duties to monitor and inform by failing to ensure that the other fiduciaries were acting in accord with their fiduciary duties and failing to properly disclose material information to the ESOP and the participants, including the CBIC and FCS problems. These acts and omissions allegedly constitute breaches of fiduciary duty which proximately caused the damages sustained by Plaintiff. Compl. at 6–7.

Defendant seeks summary judgment on these two counts on three grounds: (1) Defendant cannot be held liable for breach of fiduciary duty because it was not acting in its fiduciary capacity when it took the actions at issue here, and Defendant's actions constituted "business decisions" in which Defendant exercised its best business judgment; (2) Plaintiff has failed to

show direct causation between the alleged act and the resulting loss, as well as evidence of damages; and (3) Plaintiff lacks standing to bring suit because it is not a beneficiary or participant of the plan and the plan has been terminated. Doc. 26 at 1–2.

Defendant's strongest argument in support of its motion for summary judgment is that there was no breach of fiduciary duty because the decisions at issue are "business decisions" not "fiduciary decisions." Plaintiff claims there was a breach of fiduciary duty in violation of ERISA § 404, 29 U.S.C. § 1104. Compl. at 3. "To establish a claimed breach of fiduciary duty, an ERISA plaintiff must prove a breach of a fiduciary duty and a prima facie case of loss to the plan." *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995). Section 404(a) of ERISA imposes on fiduciaries the duty of undivided loyalty to plan participants and beneficiaries and a duty to exercise care, skill, prudence, and diligence. *Id.*; 29 U.S.C. § 1104.

Courts acknowledge, however, that fiduciaries may sometimes wear two hats, and not all decisions made by a fiduciary are "fiduciary decisions." The Supreme Court explained:

> Under ERISA, . . . a fiduciary may have financial interests adverse to beneficiaries. Employers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers . . . , or even as plan sponsors. . . ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions. Thus, the statute does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead it defines an administrator, for example, as a fiduciary only "to the extent" that he acts in such a capacity in relation to a plan. In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Pegram v. Herdrich*, 530 U.S. 211, 225–26, 120 S. Ct. 2143, 2152–53, 147 L. Ed. 2d 164 (2000) (citations omitted).

Thus, as stated above, the first question to ask is whether the actor was performing a

fiduciary function. According to Defendant, Plaintiff contends that Defendant breached its duty to the Plan by "failing to adequately investigate the financial background of companies the Defendant was proposing to merge with and failing to institute adequate financial protections to protect against embezzlement post-merger." Doc. 26 at 24. Defendant argues that this conduct is a business decision, not a plan administration function, and as such it cannot constitute a violation of an ERISA fiduciary duty. *Id.*

In response, Plaintiff urges that HC4's conduct was indeed directed at the Plan. Plaintiff points to ERISA § 406, 29 U.S.C. § 1106, which prohibits a fiduciary from causing a plan to engage in a transaction which transfers any assets of the plan, and argues that the record is clear that Jason Freeman, acting as a fiduciary, permitted such a transfer of plan assets when he failed to prevent Esther Francis from paying "ghost employees" using the ESOP's assets. However, as Defendant notes in its reply, Plaintiff did not assert a claim for engaging in self-interested prohibited transactions with plan assets in violation of 29 U.S.C. § 1106; rather, Plaintiff only alleged violations of ERISA § 404, 29 U.S.C. 1104. Thus, Plaintiff offers in its response evidence of a "prohibited transaction," but not of a breach of fiduciary duty.

As explained in *Pegram*, to establish that a breach of fiduciary duty occurred, the actor must have been acting in its fiduciary capacity. 530 U.S. at 225–26. When Hallmark decided to merge its company with Esther Francis's companies, it was not acting in the capacity of a fiduciary of the ESOP. Rather, the decision to merge was an executive business decision. Furthermore, in making these business decisions, Defendant acted in good faith, with the care of an ordinarily prudent person under similar circumstances, and with the belief that the actions taken were in the best interests of the corporation. Accordingly, the Court agrees with Defendant that no breach of fiduciary duty occurred because the actions in question were not made in a

fiduciary capacity, but were business decisions shielded by the business-judgment rule.

Decisions made in a fiduciary capacity under ERISA include taking actions such as: exercising discretionary authority over the assets of an ERISA plan, rendering investment advice for a fee with respect to the assets of the plan, administering the plan, and investing the plan's assets. *Beddall v. State St. Bank & Tr. Co*., 137 F.3d 12, 18 (1st Cir. 1998) ("Because one's fiduciary responsibility under ERISA is directly and solely attributable to his possession or exercise of discretionary authority, fiduciary liability arises in specific increments correlated to the vesting or performance of particular fiduciary functions in service of the plan, not in broad, general terms."). As pointed out by the Eighth Circuit, "[v]irtually all of an employer's significant business decisions affect the value of its stock, and therefore the benefits that ESOP plan participants will ultimately receive." *Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir. 1992); *see also Johnson v. Couturier,* 572 F.3d 1067, 1077 (9th Cir. 2009). Thus, courts have found that "ERISA's fiduciary duties under § 1104 attach only to transactions that involve investing the ESOP's assets or administering the plan." *Id.*

In this case, the actions Plaintiff complains of stem from Hallmark's decision to merge with CBIC and FCS, not from plan administration functions. Courts have held that the fiduciary provisions of ERISA are not implicated in the sale or merger of a business merely because the terms of such an action will affect retirement benefits. *See Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir. 1986) ("[T]he ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. . . .ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.").

As for using good business judgment, prior to the merger, Defendant performed due

diligence and had its accountants examine the financial statements and tax returns of CBIC and FCS, which did not uncover the hidden tax obligations. Doc. 26 at 25. Additionally, the ESOP's trustee, Roten, hired a third party valuation company that also performed separate due diligence on the financial background of CBIC and FCS and did not find the hidden tax obligations. Defendant made a business decision based on prudent investigation, but unfortunately, Esther Francis had committed fraudulent acts and hidden them, which caused many post-merger problems for HC4. Despite this problematic outcome, the Court finds that the Defendant's conduct did not constitute a breach of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104.

The Court emphasizes that summary judgment is granted only on the counts pled by Plaintiff, for breach of duties under ERISA § 404, 29 U.S.C. § 1104 and breach of fiduciary duty. Plaintiff raises many sound arguments regarding the prohibited transactions of ESOP fiduciaries in violation of ERISA § 406, 29 U.S.C. § 1106. The Court does not address these arguments because the Plaintiff did not plead a cause of action under that Section in its complaint, nor was that Section the subject of Defendant's motion for summary judgment.

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion for Summary Judgment, Doc. 26, is GRANTED. It is further

ORDERED that Defendant's Motion for Status Conference, Doc. 35, is DENIED as moot.

SIGNED at Houston, Texas, this 12th day of July, 2018.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE